UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| THE ESTATE OF ZACHARY SNYDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:11CV24 LMB |
| ) | |
| STEVEN JULIAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the Complaint of the Estate of Zachary Snyder, consisting of Mr. Snyder's four minor children through next friend Amanda Pryor, alleging excessive use of force under 42 U.S.C. § 1983 and a state wrongful death claim against Defendant Steven Julian.  This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).  Presently pending before the court is Defendant Julian's Motion for Judgment on the Pleadings.  (Doc. No. 42).  Also pending is Defendant Julian's Motion for Summary Judgment.  (Doc. No. 40).

### Background

The decedent, Zachary Snyder, had been released to parole from the actual custody of the Department of Corrections ("DOC") after having served a portion of his sentences for the possession of a controlled substance and theft of an automobile.  The Probation and Parole Board subsequently listed Mr. Snyder as an absconder and sought to return him to actual custody in the DOC.  An arrest warrant for Mr. Julian was issued.  Defendant Steven Julian was an investigator for the Fugitive Apprehension Unit of the DOC.

On the night of February 14, 2008, defendant received information from a female located in Cape Girardeau, Missouri that Mr. Snyder was at her residence. Defendant attempted to arrest Mr. Snyder. Defendant, allegedly perceiving a threat to his person, ultimately shot and killed Mr. Snyder.

In their Complaint, plaintiffs assert a 42 U.S.C. § 1983 excessive force claim and a state law wrongful death claim against defendant.

### I.  Motion for Judgment on the Pleadings

Defendant has filed a Motion for Judgment on the Pleadings, in which he argues that plaintiffs' claims are barred by the applicable statute of limitations and should therefore be dismissed as a matter of law.

### A.  Standard

When considering a motion for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., the Court must accept as true all factual allegations set out in the complaint and construe the complaint in the light most favorable to the plaintiff, drawing all inferences in her favor. Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law," the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009) (citing Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)).

### B.  Discussion

Defendant argues that he is entitled to judgment in his favor on plaintiffs' state wrongful death claim and plaintiffs' § 1983 claim because plaintiffs' claims fall outside the applicable statue

of limitations.

**1.       Wrongful Death Claim**

Defendant contends that plaintiffs' state wrongful death claim is barred by the one-year statute of limitations set forth in Mo. Rev. Stat. § 516.145.

Plaintiffs' wrongful death claim is authorized by Missouri's wrongful death statute, Mo. Rev. Stat. § 537.080.  The statute of limitations for a wrongful death claim is three years after the cause of action accrues.  Mo. Rev. Stat. § 537.100.  A wrongful death cause of action accrues to the statutory beneficiaries when death occurs.  Dzur v. Gaertner, 657 S.W.2d 35, 36 (Mo. Ct. App. 1983).  Section 537.085, part of the wrongful death statutory scheme, provides that a defendant may:

> plead and prove as a defense any defense which the defendant would have had against the deceased in an action based upon the same act, conduct, occurrence, transaction, or circumstance which caused the death of the deceased, and which action for damages the deceased would have been entitled to bring had death not ensued.

Mo. Rev. Stat. § 537.085.

Section 516.145 states that "all actions brought by an offender...against the department of corrections...or any employee...for an act in an official capacity, or by the omission of an official duty" must be brought within one year.  Mo. Rev. Stat. § 516.145.  An "offender" is defined as "a person under supervision or an inmate in the custody of the department."  Mo. Rev. Stat. § 217.010.

Defendant argues that the decedent, who was released to parole, was an "offender" under Section 217.010.  Defendant contends that, if the decedent had survived and brought a suit himself against defendant, he would have been subject to a one-year statute of limitations.

Defendant argues that, because the one-year statute of limitations is a defense that defendant "would have had against the deceased in an action based upon the same act conduct, occurrence, transaction, or circumstance which caused the death of the deceased," defendant may raise this defense against plaintiffs with respect to plaintiffs' wrongful death claim. Plaintiffs' cause of action accrued on or about February 14, 2008, the date when Mr. Snyder died. Defendant argues that plaintiffs were required to file their Complaint on or before February 14, 2009, and that the instant Complaint filed on February 10, 2011 is barred by the one-year statute of limitations.

Where a cause of action, such as wrongful death, has its own built in statute of limitations, the latter prevails. Thompson by Thompson v. Crawford, 833 S.W.2d 868, 871 (Mo. banc 1992). Likewise, the Missouri Court of Appeals has held that, when a plaintiff alleges medical malpractice caused death, the wrongful death statute of limitations prevails over the specific medical malpractice statute of limitation set forth in Chapter 516. Gramlich v. Travelers Ins. Co., 640 S.W.2d 180 (Mo. Ct. App. 1982).

In considering whether the time-bar of the deceased's malpractice action operated to bar his widow's wrongful death action, the Gramlich court stated "[w]e believe the better view to be that the statutory beneficiary may not recover in those cases where a deceased never had a cause of action against the defendants or where there was [a] substantial defense which could be invoked, such as contributory negligence." 640 S.W.2d at 186. The court noted:

> We have found no case in Missouri where the procedural bar of the statute of limitation as to the injured party was used to defeat a wrongful death action. The action for wrongful death is an action separate and distinct from the action for injuries to the decedent. It cannot arise and the statutory beneficiaries can take no action with respect to their claim until after the death occurs. The wrongful death action has it own limitation which is substantial in nature rather than procedural. [citation omitted].

Id.

The Court also indicated that its holding was supported by Mo. Rev. Stat. § 516.300, which provides that the provisions of sections 516.010 to 516.370, which include the limitations for medical malpractice actions as well as wrongful death actions, "shall not extend to any action which is or shall be otherwise limited by any statute but such actions shall be brought within the time limited by such statute."

The undersigned finds that plaintiffs' wrongful death claim is governed by the three-year wrongful death statute of limitations. The Missouri Court of Appeals' decision in Gramlich, as well as the plain language of Section 516.300 compels this result. The statute of limitations applicable to actions for wrongful death is "the only statute of limitations that could be invoked to defeat the claim of plaintiffs in this case." Gramlich, 640 S.W.2d at 186. In Baysinger v. Hanser, 199 S.W.2d 644, 647 (Mo. 1947), the Supreme Court, after holding that "[w]hen the wrong of malpractice...results in...death the...suit and the object of [the] action is of necessity for and under the wrongful death statute and not for the personal wrong of malpractice" continued with what is pertinent to the instant matter, "in the same manner that death resulting from any tortuous act gives rise to a right of action for the wrongful death rather than for the personal tort." (emphasis added).

Plaintiffs' cause of action accrued on February 14, 2008, when Mr. Snyder died. Plaintiffs filed this action on February 10, 2011, within three years after the cause of action accrued. As such, plaintiffs' wrongful death action was timely filed.

**2.     Section 1983 Claim**

Defendant next argues that plaintiff's excessive force claim under 42 U.S.C. § 1983 is

barred by the one-year statute of limitations set forth in Mo. Rev. Stat. § 516.145.

There is no general federal statute of limitations applicable to claims brought under Section 1983. Duisen v. Adm'r and Staff, Fulton State Hosp. No.1, Fulton, Mo., 332 F. Supp. 125, 127 (W.D. Mo. 1971). Instead, the federal courts borrow the applicable state statute of limitations for personal injury torts. Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007). In Missouri, the relevant limitations period for general personal injury torts is five years. Mo. Rev. Stat. § 516.120(4). Accordingly, the applicable limitations period for claims brought under § 1983 is five years. Sulik v. Taney County, Mo., 393 F.3d 765, 767 (8th Cir. 2005).

The Eastern District of Missouri recently held that the five-year personal injury statute of limitations applied rather than the one-year statute of limitations set forth in Section 516.145 in a Section 1983 case brought by an offender against employees of the Department of Corrections. See Brown v. Hancock, 4:10CV2045HEA, 2011 WL 4528459 (E.D. Mo. Sept. 29, 2011). Defendant has cited no authority to the contrary.

As such, the undersigned finds that the five-year personal injury statute of limitations applies in this case, and that plaintiff's action was commenced within this period.

Accordingly, defendant's Motion for Judgment on the Pleadings will be denied.

## II.     Motion for Summary Judgment

Defendant argues that plaintiffs' excessive force claim against defendant fails as a matter of law. Defendant further argues that he is entitled to judgment as a matter of law on the basis of qualified immunity, official immunity, and the public duty doctrine.

### A.     Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  Id.  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

     A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  The nonmoving party may not rest upon mere allegations or denials of his pleading.  Anderson, 477 U.S. at 258.  "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)).

     In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.

**B.     Facts**[1]

The following facts are undisputed:

Acting upon a warrant for Mr. Snyder's arrest, Defendant Julian and Stoddard County Deputy Mike McGhee went to a residence at which they suspected Mr. Snyder would be present. At the residence, defendant and Mr. McGhee spoke with Leslie Tyler, occupant of the apartment. Defendant informed Mr. Tyler that if Mr. Snyder came to his residence, he should call 911 or he could be in trouble for harboring a fugitive.

On February 14, 2008, defendant received a call from a female staying at the apartment of Mr. Tyler, informing him that Mr. Snyder had been by Mr. Tyler's apartment in Cape Girardeau. At 6:19 p.m., Mr. Tyler called 911 alerting emergency services that Mr. Snyder was there and described him as "a fugitive that needed to be apprehended." At 7:07 p.m., defendant called 911 from his car requesting officer backup regarding Mr. Snyder. At 7:12, defendant called 911, and informed emergency services that the suspect was in the house, and again requested officer help.

When defendant arrived at Mr. Tyler's residence, it was dark outside. Mr. Snyder was outside the residence when defendant arrived. When defendant first saw Mr. Snyder, defendant was still in his car. Defendant exited his car and drew his service weapon. Defendant informed Mr. Snyder he had a warrant and that he was under arrest. Mr. Snyder and defendant proceeded to defendant's car, and Mr. Snyder placed his hands on defendant's car. Mr. Snyder then made a move to his right. Defendant's right hand held a service weapon. Defendant shot his service

---

[1]The court's recitation of the facts is taken from Defendant's Statement of Undisputed Material Facts (Doc. No. 41-1), Plaintiffs' Answers to Defendant's Statement of Undisputed Material Facts (Doc. No. 45-1), Plaintiffs' Additional Material Facts (Doc. No. 45-1), and the exhibits submitted by the parties.

weapon.[2] Mr. Snyder ran from defendant and eventually collapsed. Mr. Snyder was unarmed.

At 7:16 p.m., defendant called 911 to request an ambulance to tend to Mr. Snyder's gunshot wound. Emergency personnel arrived and applied medical attention to Mr. Snyder. Mr. Snyder ultimately died of a gunshot wound.

## C. Discussion

### Section 1983 Excessive Force Claim

#### 1. Merits

Plaintiff argues that defendant used excessive force when he purposefully and intentionally aimed his service weapon at Mr. Snyder, moved closer to Mr. Snyder without warning him of his intent to shoot him if he moved, and shot the unarmed Mr. Snyder in the middle of his back.

In his Motion for Summary Judgment, defendant contends that his actions were reasonable to protect himself from the threat of serious physical harm. Defendant argues that plaintiff's claims, therefore, fail as a matter of law.

Apprehension by deadly force is a seizure subject to the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 7 (1985); Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). In an excessive use of force claim, "[t]he dispositive question is whether the amount of force the officer used was objectively reasonable." Shannon v. Koehler, 616 F.3d 855, 862 (8th Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "In turn, the reasonableness of a particular use of force depends on the circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the

---

[2]The parties largely dispute the additional facts surrounding the shooting. These additional facts will be discussed in detail with respect to plaintiff's excessive force claim.

safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Shannon, 616 F.3d at 862 (internal citations omitted).

The Supreme Court in Garner defined constitutionally reasonable deadly force:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

471 U.S. at 11-12.

Defendant contends that his actions were reasonable in light of all the circumstances. Defendant states that, upon arriving at the scene, he overheard an argument between Mr. Tyler and Mr. Snyder. Defendant contends that he believed he was entering a volatile situation to arrest a felon parole absconder who had defied attempts by both his parole officer and mother to return to parole supervision. Defendant argues that he did not know if Mr. Snyder was armed, but he knew the neighborhood to be dangerous from personal experience and law enforcement reports.

Defendant states that, after Mr. Snyder placed his hands on the car, he attempted to holster his weapon while moving to handcuff Mr. Snyder. Defendant notes that Mr. Snyder was an arm's length away. Defendant contends that Mr. Snyder then made a move to his right, and that defendant's right hand held a service weapon. Defendant states that he believed Mr. Snyder was going to grab his weapon. Defendant argues that, when Mr. Snyder made a motion towards his service weapon, he had probable cause to believe that Mr. Snyder posed a threat of serious physical harm, both to himself and to others in the apartment complex.

In their Response, plaintiffs argue that the evidence establishes that there was no probable

-10-

cause of a threat of harm to defendant because Mr. Snyder was unarmed and fleeing when he was shot. Plaintiffs first note that the warrant issued by probation and parole was for absconding from parole, which did not involve the infliction or threat to inflict serious physical harm. Although plaintiffs dispute that the neighborhood in which the shooting took place was dangerous, plaintiffs contend that this fact alone would not be sufficient justification for drawing a gun and pointing it at Mr. Snyder. Plaintiffs also point out that deadly force was not necessary, as defendant was carrying a taser. (Pl's Ex. 7, p. 11). Plaintiffs argue that, after shooting Mr. Snyder, defendant holstered his firearm and drew his taser, which demonstrates that he knew all along that Mr. Snyder was unarmed. (Pl's Ex. 4, p. 217-17).

Plaintiffs also contend that defendant's story is not credible based on the physical evidence. Plaintiffs first note that Mr. Snyder was shot just to the right of the centerline of his back from a distance of twelve to eighteen inches. (Pl's Ex. 4, p. 321-22, 162). Plaintiffs argue that Mr. Snyder could not have physically turned toward defendant and reached for his gun that was twelve to eighteen inches from the center of his back.

Plaintiffs next argue that the path of the bullet through Mr. Snyder is consistent with flight rather than attack. Plaintiffs state that the bullet traveled in a slightly upward direction, from right to left, and exited the left side of Mr. Snyder's chest, striking the license plate of the car next to defendant's vehicle. (Pl's Ex. 4, p. 142, 145-46, 164-65). Plaintiffs contend that, given the path of the bullet as it left Mr. Snyder's body, it seems certain that Mr. Snyder planted his left foot and took a step with his right foot prior to the shot being fired. Plaintiffs state that the right to left path of the bullet, together with the fact that, as it was leaving the left side of Mr. Snyder's body, it was actually going downward at such a sharp angle as to strike the bottom of the license plate

holder, means Mr. Snyder was facing between the parked cars. Plaintiffs further note that, after Mr. Snyder was shot running away, he continued running in a straight line directly between the two vehicles to the right of defendant's vehicle.

In addition, plaintiffs note that defendant has told inconsistent stories. Plaintiffs point out that defendant claimed during his statement to the Cape Girardeau Police Department that Mr. Snyder lunged backwards. (Pl's Ex. 7, p. 6-7). Plaintiffs argue that this story was not believable, and note that defendant was subsequently charged with manslaughter. (Pl's Ex. 4, p. 9-10). Plaintiffs state that at defendant's trial, defendant testified that Mr. Snyder turned toward defendant to try to get defendant's weapon. (Pl's Ex. 4, p. 443-51). Finally, plaintiffs point out that, although defendant argues in his motion that he overheard Mr. Snyder arguing, he testified at trial that he had the windows up on his vehicle and was unable to hear anything being said. (Pl's Ex. 4, p. 438).

According to plaintiffs' version of events, there is no evidence that plaintiff posed a threat of serious physical harm to defendant or others. Rather, plaintiffs have set forth facts supporting their account that defendant shot a fleeing, unarmed person in the back without providing warning. Plaintiffs allege that defendant knew Mr. Snyder was unarmed, and that deadly force was not necessary as defendant was carrying a taser. Thus, there exists an issue of material fact regarding whether defendant used excessive force, which precludes summary judgment. Assuming for purposes of summary judgment that plaintiff's version is true, a jury could find that defendant's use of deadly force was not reasonable. Shannon, 616 F.3d at 863 (citing Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009)).

Accordingly, defendant is not entitled to summary judgment on the merits of plaintiffs' 42

U.S.C. § 1983 excessive force claim.

### 2. Qualified Immunity

Defendant next argues that plaintiffs' 42 U.S.C. § 1983 claim is barred by qualified immunity. "Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown, 574 F.3d at 495 (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006)). To overcome a defendant's qualified immunity claims, the plaintiff must show that: "'(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation.'" Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (quoting Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)). "The law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when the officials acted." Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005) (citing Hope, 536 U.S. at 739-40 (2002)). See also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right."). If a state official violates a clearly established constitutional right, he is not entitled to qualified immunity. Harlow, 457 U.S. at 818-19.

Here, the right to be free from excessive force is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures. Shannon, 616 F.3d at 864; Brown, 574 F.3d at 499; Graham, 490 U.S. at 396. Again, factual issues arise. A reasonable official standing in defendant's shoes could have understood that the use of deadly force was

excessive. As discussed above, if plaintiffs' allegations are true, a jury could find defendant deprived Mr. Snyder of his constitutional rights under the Fourth Amendment. Thus, defendant is not entitled to summary judgment on the basis of qualified immunity.

Accordingly, defendant's motion for summary judgment on plaintiffs' 42 U.S.C. §1983 claim will be denied.

### State Wrongful Death Claim

**1.     Official Immunity**

Defendant argues that he is entitled to official immunity on plaintiffs' state wrongful death claim.

"Pursuant to the doctrine of official immunity, public employees are protected from liability for acts of negligence committed in the performance of discretionary acts in the course of their official duties." Richardson v. Burrow, 366 S.W.3d 552, 554 (Mo. Ct. App. 2012). "Discretionary acts, those that require the exercise of judgment and discretion in determining how or whether an act should be done, are protected." Id. "Th[e] doctrine was established to protect officers from second-guessing based on hindsight," but does not protect officers from "discretionary acts done in bad faith or with malice." Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005). "Bad faith or malice generally requires actual intent to cause injury." Id. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Id. (internal quotations omitted). A defendant acts with bad faith when he acts with "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud . . . [or]

actual intent to mislead or deceive another." Id. (internal quotations omitted).

In this case, defendant's act of making an arrest is a discretionary act to which official immunity is applicable. See Robinette v. Jones, 2005 WL 3371079, at *6 (W.D. Mo. Dec. 12, 2005) ("Arrests, including any harmful touching, are generally considered discretionary acts that fall under the ambit of official immunity.").

Plaintiffs allege that defendant intentionally shot Mr. Snyder in the back when he was unarmed. The above-described evidence raises a genuine issue of material fact as to whether defendant acted in bad faith or malice. Accordingly, defendant is not entitled to summary judgment on the basis of official immunity.

### 2.     Public Duty Doctrine

Defendant also contends that he is not liable because his acts fall within the public duty doctrine.

"Under the public duty doctrine, 'a public employee is not liable to an individual for injuries resulting from a breach of duty the employee owes only to the general public.'" Teague v. St. Charles County, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010) (quoting Gregg v. City of Kansas City, 272 S.W.3d 353, 362 (Mo. Ct. App. 2008)). The protections of the public duty doctrine are not intended to be limitless and, just as the doctrine of official immunity will not apply to conduct that is willfully wrong or done with malice or corruption, the public duty doctrine will not apply where defendant public employees act in bad faith or with malice. Southers v City of Farmington, 263 S.W.3d 603, 612 (Mo. 2008).

Here, plaintiffs are not alleging that defendant failed to carry out a duty to the general public. Rather, plaintiffs allege that defendant acted intentionally in shooting Mr. Snyder in the

back.  Such acts go beyond the protection of the public duty doctrine.  See White v. Int'l Ass'n of Firefighters, Local 42, 738 S.W.2d 933, 938 (Mo. Ct. App. 1987); Berger v. City of University City, 676 S.W.2d 39, 42 (Mo. Ct. App. 1984).  As such, defendant has failed to demonstrate that he is entitled to immunity under the public duty doctrine as a matter of law.

Thus, the court will deny defendant's Motion for Summary Judgment on plaintiffs' state law wrongful death claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Julian's Motion for Judgment on the Pleadings (Doc. No. 42) be and it is **denied**.

**IT IS FURTHER ORDERED** that Defendant Julian's Motion for Summary Judgment (Doc. No. 40) be and it is **denied**.

Dated this 19th    day of July, 2012.

*/s/ Lewis M. Blanton*

LEWIS. M. BLANTON
UNITED STATES MAGISTRATE JUDGE