## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF ZACHARY SNYDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11CV24 LMB |
| | ) | |
| STEVEN JULIAN, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

Presently pending before the court is Plaintiffs' Motion to Amend Judgment. (Doc. No. 89).  Also pending is Defendant Julian's Motion for Judgment Notwithstanding the Verdict or, in the alternative, For a New Trial.  (Doc. No. 91).

### Background

On August 15, 2012, a jury returned a verdict in favor of defendant on plaintiffs' § 1983 claim, and in favor of plaintiffs on plaintiffs' state wrongful death claim.  The jury awarded a total of $1,000.000.00 in damages.  On the same date, the Clerk of Court issued a Judgment pursuant to the jury's verdict.  As to plaintiffs' wrongful death claim, the Judgment states "[t]he plaintiffs C.S., E.S., M.L.E.M. and M.O. shall receive from the Defendant Julian, $1,000,000.00 in damages."  (Doc. No. 86).

Plaintiffs filed a Motion to Amend Judgment, in which they request that the court amend the judgment pursuant to Rule 59(e) to apportion the balance of the damages awarded by the jury among the minor plaintiffs after deducting attorneys fees, expenses, and the decedent's funeral bill.  Plaintiffs state that, although the apportionment process would typically require an additional hearing, the parties in this case entitled to participate in the apportionment of damages are in

agreement through their respective mothers and next friends that such damages may be apportioned equally among them after payment of attorneys fees, expenses, and the funeral expenses of the decedent.  Plaintiffs state that Roger Snyder, adoptive father of the decedent, testified at trial that he waived any right to participate in the apportionment of any damage awarded, and that it was his desire that the decedent's four children, the minor plaintiffs, receive any damages awarded.  Plaintiffs further state that plaintiff's mother, Edith Snyder, is deceased.  On January 7, 2013, plaintiffs submitted additional evidence in support of their motion, including the Affidavit of Roger Snyder; waivers of Roger Snyder and Amanda Pryor, and consents of the minor plaintiffs' mothers to the apportionment of damages.  (Doc. No. 98).

## Discussion

### I.  Motion to Amend

Plaintiffs request that the court apportion the damages awarded by the jury among the minor plaintiffs as described above pursuant to Section 537.095.

Section 537.095 provides in pertinent part:

3.  In any action for damages under section 537.080 the trier of the facts shall state the total damages found, or upon approval of any settlement for which a petition for application of such approval has been filed, the court shall state the total settlement approved.  The court shall then enter a judgment as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court.

4.  The court shall order the claimant:
   (1) To collect and receipt for the payment of the judgment;

   (2) To deduct and pay the expenses of recovery and collection of the judgment and the attorney's fees as contracted...;

   (3) To acknowledge satisfaction in whole or in part for the judgment and costs;

(4) To distribute the net proceeds as ordered by the court; and

(5) To report and account therefor to the court.  In its discretion the court may require the claimant to give bond for the collection and distribution.

Mo. Rev. Stat. § 537.095.  See Parr v. Parr, 16 S.W.3d 332, 338 (Mo. banc 2000).

In Parr, the Missouri Supreme Court established the procedure that the courts must follow in apportioning wrongful death damages, noting that the apportionment based on the parties' respective losses must occur before the expenses and fees, as contracted, are deducted.  16 S.W.3d at 338-39.

In this case, plaintiffs argue that the parties entitled to participate in the apportionment of damages are in agreement that the damages may be apportioned equally among the minor plaintiffs.  As noted above, plaintiffs have submitted the Affidavit of Roger Snyder, the father of decedent Zachary Snyder.  Mr. Snyder states as follows: Zachary Snyder died on February 14, 2008; Mr. Snyder was single and unmarried at the time of his death, therefore, no spouse exists having a claim under the Missouri Wrongful Death Statutes § 537.080-537.100; Zachary Snyder was survived by his father, Roger Snyder, and by his mother Edith Snyder; Edith Snyder died on September 12, 2010, in the State of Missouri and she was at the time of her death a single and unmarried person and her sole heirs at law were her daughter Amanda Pryor and the four minor children of her deceased son Zachary Snyder; Edith Snyder left no will and no probate proceeding was commenced regarding the estate of Edith Snyder in Missouri or elsewhere; Edith Snyder's daughter Amanda Pryor is the sister of Zachary Snyder and is the personal representative of the Estate of Zachary Snyder and is also the next friend of the four minor children of Zachary Snyder; Zachary Snyder had four minor children all of whom are named as plaintiffs herein: M.O. (D.O.B.

-3-

September 11, 2008), M.L.E.M. (D.O.B. November 22, 2004), E.S. (D.O.B. April 4, 2004), and

C.S. (D.O.B. September 1, 2002); and, except the four children specifically named above,

Zachary Snyder had no other children; no persons other than Roger Snyder, the heirs of Edith

Snyder, and the four minor children of Zachary Snyder identified above have any claim under the

Missouri Wrongful Death Statutes § 537.080-537.100, arising out of the death of Zachary

Snyder.  (Doc. No. 98).

Plaintiffs have submitted a copy of Zachary Snyder's birth certificate, which lists Zachary

Snyder's father as Roger Snyder and Zachary Snyder's mother as Edith Collins.  (Pl's Ex. A).

Plaintiffs have also attached a copy of Zachary Snyder's death certificate, which indicates that

Zachary Snyder was never married, and that his parents are Roger Snyder and Edith Snyder.  (Pl's

Ex. B).

Plaintiffs have also submitted "Roger Snyder's Waiver and Consent to Apportionment of

Damages Among Minor Children of Zachary Snyder," and "Amanda Pryor's Waiver and Consent

to Apportionment of Damages Among Minor Children of Zachary Snyder."  (Doc. No. 98-1).  In

Roger Snyder's Waiver and Consent to Apportionment of Damages Among Minor Children of

Zachary Snyder, Mr. Snyder states that he waives his right to have an apportionment to him of

any damages awarded in this case.  ¶ 2.  Mr. Snyder states that he specifically consents that any

damages awarded may be applied to the payment of the funeral expenses of Zachary Snyder owed

to Rainey-Mathis Funeral Home in the amount of $5,142.11 with the remaining balance after

payment of attorney fees and expenses apportioned equally among Zachary Snyder's four minor

children.  ¶ 3.

In Amanda Pryor's Waiver and Consent to Apportionment of Damages Among Minor

Children of Zachary Snyder, Ms. Pryor states as follows:  she is the sister of Zachary Snyder and the appointed personal representative of his estate; she is the daughter of Edith Snyder, who died on September 10, 2010; Edith Snyder was single and unmarried at the time of her death and Ms. Pryor was her only surviving child; Edith Snyder's mother and father died before she did; Zachary Snyder was Edith Snyder's only other child and he died before her and was survived by his four minor children, M.O., M.L.E.M., E.S., and C.S.; no probate proceedings were commenced in Missouri or in any other state regarding the estate of Edith Snyder; prior to Edith Snyder's death she stated and agreed that she wanted Zachary Snyder's funeral bill to Rainey-Mathis Funeral Home in the amount of $5,142.11 to be paid from any damages awarded arising out of Zachary Snyder's death and she further stated and agreed that she wanted the remaining balance of any such damages remaining after payment of attorney fees and expenses to be apportioned among Zachary Snyder's four minor children.  ¶¶ 1-7.  Ms. Pryor states that, in her capacity as the sister of Zachary Snyder and personal representative of the Estate of Zachary Snyder and as the daughter and heir at law of Edith Snyder, deceased, she waives any right she may have to participate in the apportionment of any damages awarded arising out of the death of Zachary Snyder.  ¶ 7.  Ms. Pryor further states that she specifically consents as duly appointed next friend of the minor plaintiffs herein that any damages awarded may be applied to the payment of the funeral expenses of Zachary Snyder owed to Rainey-Mathis Funeral Home in the amount of $5,142.11 with the remaining balance after payment of attorney fees and expenses apportioned equally among Zachary Snyder's four minor children M.O., M.L.E.M., E.S., and C.S.  ¶ 8. Finally, Ms. Pryor states that Zachary Snyder was never married and he had no other children other than the four minor children who are named as plaintiffs in this action.  ¶ 9.

Plaintiffs have also submitted the following documents:  "Consent of Mother of Minor Plaintiffs [E.S.] and [C.S.] to Apportionment of Damages," "Consent of Mother of Minor Plaintiff [M.L.E.M.] to Apportionment of Damages," and "Consent of Mother of Minor Plaintiff [M.O.] to Apportionment of Damages."  (Doc. No. 98-1).  In each of these documents, the respective mothers of plaintiff's four minor children state that they consent that any damages awarded in this case may be applied to the payment of the funeral expenses of Zachary Snyder owed to Rainey-Mathis Funeral Home in the amount of $5,142.11 with the remaining balance after payment of attorney fees and expenses apportioned equally among Zachary Snyder's four minor children, M.O. (D.O.B. September 11, 2008), M.L.E.M. (D.O.B. November 22, 2004), E.S. (D.O.B. April 4, 2004), and C.S. (D.O.B. September 1, 2002).  (Doc. No. 98-1).

The undersigned finds that plaintiffs have presented sufficient evidence for the court to make a determination, without a hearing, as to the apportionment of the damages awarded by the jury.  The court finds that the damages shall be apportioned equally among Zachary Snyder's four minor children, as follows: $250,000.00 to M.O., $250,000.00 to M.L.E.M., $250,000.00 to E.S., and $250,000.00 to C.S.

Although plaintiffs request that the court apportion the balance of the damages after payment of attorneys fees, expenses, and the funeral expenses of the decedent, the apportionment based on the parties' respective losses must occur before the expenses and fees, as contracted, are deducted.  Parr, 16 S.W.3d at 338-39.  Thus, the court will order payment of attorney's fees and expenses as contracted, to be paid out of the plaintiffs' respective settlement proceeds.

Further, pursuant to Section 537.095 and Parr, the court will direct the claimant, Amanda Pryor, to collect and receive the damages amount; from the damages award, claimant shall deduct

-6-

and pay the expenses of recovery and collection of the judgment and the attorneys' fees as contracted; claimant shall acknowledge satisfaction of the judgment and costs; claimant shall distribute the net proceeds as ordered by the court; and claimant shall report to the court indicating compliance with this order.

## II.   Motion for Judgment Notwithstanding the Verdict/Motion for a New Trial

Defendant has filed Defendant Julian's Motion for Judgment Notwithstanding the Verdict or, In the Alternative, For a New Trial.  (Document No. 91).[1]  In his motion, he alleges that the court should grant a new trial on plaintiffs' wrongful death claim because:

   a.   the substantial weight of the evidence did not refute that the actions of Defendant Steven Julian were reasonable; and

   b.   the substantial weight of the evidence proved that a reasonable jury could have found for defendant on the affirmative defense.

Defendant also claims that he was prejudiced by the admission of irrelevant evidence of alleged statements of Steven Julian, setting out four statements of the defendant which he claims should have been excluded.  Defendant argues that the court should remit the amount of the jury's verdict because the evidence viewed in the light most favorable to the verdict did not support the amount of damages awarded which was grossly excessive and demonstrated that it was based on sympathy and bereavement resulting from the admission of irrelevant and highly prejudicial hearsay evidence.  Defendant filed a Memorandum in Support of his motion.  Plaintiffs filed a Memorandum in Opposition to defendant's motion.  (Doc. No. 102).

---

[1]Defendant has labeled his motion a Motion for Judgment Notwithstanding the Verdict or In the Alternative, for a New Trial.  Such motions are now called Motions for Judgment as a Matter of Law.  See Fed.R.Civ.P. 50.

**Factual Background**

The decedent, Zachary Snyder, had been released on parole from the actual custody of the Department of Corrections (DOC) after having served a portion of his sentences for the possession of a controlled substance and theft of an automobile.  The Probation and Parole Board subsequently listed Mr. Snyder as an absconder and sought to return him to actual custody in the DOC.  An arrest warrant for Mr. Snyder was issued.  Defendant Steven Julian was an employee of the Fugitive Apprehension Unit of the Board of Probation and Parole, a Division of the Department of Corrections.  Acting upon the warrant for Mr. Snyder's arrest, Defendant Julian and Stoddard County Deputy Mike McGhee went to a residence at which they suspected Mr. Snyder would be present.  At the residence, defendant and Mr. McGhee spoke with Leslie Tyler, occupant of the apartment.  Defendant informed Mr. Tyler that if Mr. Snyder came to his residence, he should call 911 or he could be in trouble for harboring a fugitive.

On February 14, 2008, defendant received a call from a female staying at the apartment of Mr. Tyler, informing him that Mr. Snyder had been by Mr. Tyler's apartment in Cape Girardeau.  At 6:19 P.M., Mr. Tyler called 911 alerting emergency services that Mr. Snyder was there and described him as "a fugitive that needed to be apprehended."  At 7:07 P.M., defendant called 911 from his car requesting officer backup regarding Mr. Snyder.  At 7:12 P.M., defendant called 911 and informed emergency services that the suspect was in the house and again requested officer help.

When defendant arrived at Mr. Tyler's residence, it was dark outside.  Mr. Snyder was outside the residence when defendant arrived.  When defendant first saw Mr. Snyder, defendant was still in his car.  Defendant exited his car and drew his service weapon.  Defendant informed

-8-

Mr. Snyder he had a warrant and that he was under arrest.  Mr. Snyder and defendant proceeded

to defendant's car, and at defendant's direction, Mr. Snyder placed his hands on defendant's car.

Mr. Snyder then made a move to his right.  Defendant's right hand held a service weapon.

Defendant shot his service weapon.  Mr. Snyder ran from defendant and eventually collapsed.

Mr. Snyder was unarmed.

At 7:16 P.M., defendant called 911 to request an ambulance to attend to Mr. Snyder's

gunshot wound. Emergency personnel arrived and applied medical attention to Mr. Snyder.  Mr.

Snyder ultimately died of a gunshot wound.

## Legal Standards

The case of <u>Trickey v. Kaman Industrial Technologies, Corp.</u>, 2011 WL 5900993 at * 3

(E.D. Mo.), affirmed No. 12-1061 (8th Cir. Feb. 5, 2013), sets out the legal standards for the

grounds raised by defendant:

### A.    Judgment as a matter of law

Defendant Kaman's motion for judgment as a matter of law faces a high
hurdle, as "A jury verdict is entitled to extreme deference."  <u>Craig Outdoor
Advertising, Inc. v. Viacom Outdoor, Inc.</u>, 528 F.3d 1001, 1009 (8th Cir. 2008)
(citing <u>Morse v. S. Union Co.</u>, 174 F.3d 917, 922 (8th Cir.), <u>cert. dismissed</u>, 527
U.S. 1059 (1999)).  The Court may not set the jury verdict aside "unless no
reasonable jury could have reached the same verdict based on the evidence
submitted."  <u>Craig</u>, 528 F.3d at 1009 (citing <u>Ryther v. KARE 11</u>, 108 F.3d 832,
836 (8th Cir.), <u>cert. denied</u>, 521 U.S. 1119 (1997)).

### B.    New trial

The district court may grant a new trial when the first trial resulted in a
miscarriage of justice, through a verdict against the weight of the evidence, an
excessive damage award, or legal errors at trial.  <u>Gray v. Bucknell</u>, 86 F.3d 1472,
1480 (8th Cir. 1996); <u>see also</u> Fed.R.Civ.P. 59(a).  With respect to legal errors, a
"miscarriage of justice" does not result whenever there are inaccuracies or errors
at trial; instead, the party seeking a new trial must demonstrate that there was

prejudicial error.  <u>Buchholz v. Rockwell International Corp.</u>, 120 F.3d 146, 148 (8th Cir. 1997).  Errors in evidentiary rulings are prejudicial only where the error likely affected the jury's verdict.  <u>Diesel Machinery, Inc. v. B. R. Lee Industries, Inc.</u>, 418 F.3d 820, 833 (8th Cir. 2005).

### Judgment as a Matter of Law

When a court considers a motion for judgment as a matter of law, it does not reweigh or re-evaluate the evidence.  <u>Howard v. Missouri Bone and Joint Center</u>, 615 F.3d 991, 995 (8th Cir. 2010); it gives "great deference to the jury's verdict."  <u>Heaton v. The Weitz Co.</u>, 534 F.3d 882, 889 (8th Cir. 2008).  "Judgment as a matter of law is appropriate only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'"  <u>Keenan v. Computer Assoc. Int'l, Inc.</u>, 13 F.3d 1266, 1269 (8th Cir. 1994) (<u>quoting</u> <u>White v. Pence</u>, 961 F.2d 776, 779 (8th Cir. 1992)).

Defendant Julian's Memorandum (Doc. No. 92)–under the section A. Judgment as a Matter of Law – sets out a similar rule: "A jury's verdict must be affirmed 'unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could not have found for that party."  <u>Cross v. Cleaver</u>, 142 F.3d 1059, 1066 (8th Cir. 1998)." (Doc. No. 92, p. 2).

Apart from the fact that the reasonable jury in this case did find in favor of the plaintiffs on the wrongful death claim, the court which heard the evidence cannot find that the jury could not have found for the plaintiffs.  Thus, the court cannot set the jury verdict aside.  <u>Craig</u>, 528 F.3d at 1009.

Under B. Affirmative Defense, (Doc. No. 92, p. 9), defendant argued:

The State is also entitled to judgment as a matter of law because it proved

-10-

its entitlement to judgment under the law as set forth in Instruction Number 16 that your verdict must be for Defendant Steven Julian if the jury could found [sic] that defendant had reasonable cause to apprehend and did apprehend great bodily harm from Zachary Snyder to himself and others, and that Julian did not create the situation that caused the apprehension, that the shooting of Zachary Snyder was in defense against this apprehended great bodily harm, and that Julian used only such force as was reasonable and necessary.

The affirmative defense instruction, Instruction No. 16, immediately follows Instruction No. 15, the wrongful death verdict director, and must be read and considered in conjunction with Instruction No. 15.  In the verdict, the jury found specifically for the plaintiffs on Instruction No. 15.  Instruction No. 15 directs the jury to find for the plaintiffs if they find the three elements required by the instruction, "unless you believe plaintiffs are not entitled to recover by reason of Instruction No. 16," the affirmative defense instruction defendant is arguing the jury could have found.  In reaching their verdict using Instruction No. 15, the jury specifically rejected the affirmative defense contained in Instruction No. 16.

## New Trial

In his alternative motion, for a new trial, defendant urges that "Plaintiffs' evidence therefore failed to meet the objective test: No reasonable person would have found Steven Julian's actions under the circumstances to be anything but reasonable in light of the totality of the circumstances."  (Doc. No. 92, p. 5).

Again, a jury composed of reasonable persons in this case found Steven Julian at fault and returned the wrongful death verdict in favor of plaintiffs and against defendant.

## Admission of Irrelevant Evidence

Defendant argues that he was prejudiced by the admission of irrelevant evidence including:

1.      Testimony of Officer Robert Ross that "Steven Julian told him he could use his authority to kick down doors wherever he is searching for a       fugitive." (Doc. No. 92 at 10).

2.      Statements of Roger Snyder reflecting the effect of his son's death on him as Roger Snyder was not a party to this action;

3.      Argument that Zachary Snyder would be alive if Steven Julian had waited for police backup to effect the arrest as it is speculative, highly prejudicial and may have confused the jury; and

4.      Evidence and argument by plaintiffs regarding the use of the term "force continuum" since defendant's objection to such testimony as it pertained to DOC policy was sustained in a motion *in limine*, but objection made at trial was overruled as the testimony pertained to local police officers.

The court is handicapped when ruling on defendant's allegations of alleged evidentiary errors in that there is no transcript of the pretrial hearing nor of the trial.

With reference to point one above, as the court recalls, there was testimony that defendant claimed he could kick down doors in pursuit of absconders.  This comment was relevant with regard to the plaintiffs' argument that it showed defendant's attitude of mind toward parole violators indicating Julian's claim of right to use force.  It is also consistent with the second element of the plaintiffs' verdict director, Instruction Number 15, that defendant "used more force than was reasonably necessary."

With respect to point two above, Roger Snyder was the victim's, Zachary Snyder's, father.  He was a potential beneficiary under the statute before he gave up his right in favor of the

victim's children.  His loss was relevant to the damages caused by defendant's actions.

With reference to point three above, defendant argues in his memorandum "Testimony and argument regarding whether Zachary Snyder would be alive if Steven Julian had waited for backup is speculative and highly prejudicial."  (Doc. No. 92, p. 12).  Again, the court does not have a transcript and defendant does not identify whose testimony he refers to or what the testimony was.  It is factual that defendant did not wait for the arrival for police backup.  Argument by the plaintiffs during closing, that if defendant had waited for backup, the tragedy that occurred might have been avoided was legitimate argument.  It pointed to and was compatible with plaintiffs' theory that defendant acted precipitately, in haste, rather than as a reasonable person in his place would have acted.

With reference to point four above, the force continuum is a concept separate and apart from policy adopted by reasonable police departments or the Department of Corrections.  The latter was excluded at the pretrial conference; the "force continuum" term as used in the trial referred to the gradation of uses of force a reasonable officer would consider taking when facing different circumstances and, as noted, is a separate concept which might be included in a department's policy but is not a statement of a law enforcement department's policy itself.

The court made its rulings on the admissibility of evidence during the trial, and this court is not convinced there was error in those rulings.  With respect to motions in limine, the parties were cautioned at the pretrial conference that any ruling before trial was preliminary and subject to change during the trial as the evidence was presented.

As the District Court stated in Trickey, 2011 WL 5900993, at *3,

With respect to legal errors, a "miscarriage of justice" does not result whenever

-13-

there are inaccuracies or errors at trial; instead the party seeking a new trial must demonstrate that there was prejudicial error.  Buchholz v. Rockwell International Corp., 120 F.3d 146, 148 (8th Cir. 1997).  Errors in evidentiary rulings are prejudicial only where the error likely affected the jury's verdict.  Diesel Machinery, Inc. v. B. R. Lee Industries, Inc., 418 F.3d 820, 833 (8th Cir. 2005).

The court does not believe defendant has shown that what he claims as errors in evidentiary rulings were prejudicial, that the error likely affected the jury's verdict.

### Official Immunity and Public Duty Doctrine

Defendant argues that Defendant Julian should not have been liable for plaintiff's wrongful death because Defendant Julian was protected by Official Immunity and the Public Duty Doctrine.


### Official Immunity

In Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. banc 2008), the Supreme Court of Missouri described the function of official immunity in the following terms:   "This judicially created doctrine protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. Davis v. Lambert-St. Louis Int'l Airport, 193 S.W.3d 760, 763 (Mo. banc 2006)."  The Southers Court warns that "Even a discretionary act, however, will not be protected by official immunity if the conduct is wilfully wrong or done with malice or corruption.  Schooler v. Arrington, 106 Mo.App. 607, 81 S.W. 468, 469 (1904)."  263 S.W.3d at 610-611.  As the Southers case points out, Missouri has long applied the doctrine of official immunity and cites Reed v. Conway, 20 Mo. 22 (1854), which determined that public officers are immune from liability for discretionary decisions, so long as their motives were not tainted by fraud or malice.

The United States Supreme Court discussed and pronounced the law regarding the use of

-14-

lethal force in the arrest of a suspect in <u>Tennessee v. Garner</u>, 471 U.S. 1, 105 S.Ct. 1694 (1985).

Among the Court's comments are:

> [T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.....[N]otwithstanding probable cause to seize a suspect, an officer may not always do so by killing him....[T]he use of a deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of a deadly force to do so. ...A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

471 U.S. 1, 7-11, 105 S.Ct. 1694, 1699-1701.

> The Court continues:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

<u>Id.</u> at 12, 105 S.Ct. at 1701.

In <u>Craighead v. Lee</u>, 399 F.3d 954, 963 (8th Cir. 2005), the Court held that the reasoning it applied to the denial of qualified immunity on the plaintiffs' Section 1983 claims led the Court to affirm the denial of official immunity as to the state law claims.[2]

In <u>Craighead</u>, 399 F.3d at 963, the Court discussed what is involved in the analysis of qualified immunity, as applied to a federal claim under Section 1983, and directed the same

---

[2]The plaintiff in <u>Craighead</u> raised Minnesota state law claims. The Court noted that, under Minnesota law, the decision to use deadly force is a discretionary decision entitling a police officer to official immunity absent a "willful or malicious wrong." <u>Craighead</u>, 399 F.3d at 963. As will be discussed in more detail, Missouri law also excludes acts committed with malice from the protection of official immunity.

analysis should be used with regard to official immunity on a state law claim.  The Court held that

in a suit against an officer for an alleged violation of a constitutional right, the elements of

qualified immunity must be considered in proper sequence.  The Court found the first question is,

taken in the light most favorable to the party asserting the injury, do the facts alleged show that

the officer's conduct violated a constitutional right?  Craighead cited Saucier v. Katz, 533 U.S.

194, 201, 121 S.Ct. 2151, 2156 (2001), as its authority.  If the facts, taken in the light most

favorable to the party asserting injury, show that the officer's conduct violated a constitutional

right, the second question is whether the right was clearly established.  Craighead, 399 F.3d at 961

(citing Saucier at 202, 121 S.Ct. at 2156).

  The Craighead Court summarized the law which applies both on the question of qualified

immunity and official immunity with regard to state law claims:

> Since this case presents an issue of whether an officer used excessive force, the
> case must be analyzed under the Fourth Amendment's "objective reasonableness"
> standard.  Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867-68, 104
> L.Ed.2d 443 (1989).  "[T]he question is whether the officers' actions are
> 'objectively reasonable' in light of the facts and circumstances confronting them,
> without regard to their underlying intent or motivation." Id. at 397, 109 S.Ct. at
> 1872.  Apprehension by the use of deadly force is a seizure subject to the
> reasonableness requirement of the Fourth Amendment.  Tennessee v. Garner, 471
> U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985).  Notwithstanding probable
> cause to seize a suspect, an officer may not always do so by killing him.  Id. at 9,
> 105 S.Ct. at 1700.  "The intrusiveness of a seizure by means of deadly force is
> unmatched." Id.  Hence, "[w]here the suspect poses no immediate threat to the
> officer and no threat to others, the harm resulting from failing to apprehend him
> does not justify the use of deadly force to do so." Id. at 11, 105 S.Ct. at 1701.
> "Thus, if the suspect threatens the officer with a weapon or there is probable cause
> to believe that he has committed a crime involving the infliction or threatened
> infliction of serious physical harm, deadly force may be used if necessary to
> prevent escape, and if, where feasible, some warning has been given." Id. at 11-
> 12, 105 S.Ct. at 1701.

399 F.3d at 961.

As the Supreme Court stated in Garner, "Where a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."  Garner, 471 U.S. at 11, 105 S.Ct. at 1701.

Zachary Snyder was unarmed.  He was listed as an absconder by the Missouri Board of Probation and Parole and a warrant for his arrest was issued.  In the confrontation between Zachary Snyder and Steven Julian on February 14, 2008, the suspect, Zachary Snyder, did not threaten Officer Julian with a weapon nor was there probable cause to believe that Zachary Snyder had committed a crime involving the infliction or threatened infliction of serious physical harm such as would justify the use of deadly force.  Id. at 11-12, 105 S.Ct. at 1701.  When he was shot and killed, he was seized in violation of his Fourth Amendment right against unreasonable seizure.  "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."  Id. at 11, 105 S.Ct. at 1701.

The second question to be determined under Saucier is whether the right was clearly established.  "A right is clearly established when that right is so clear that a reasonable official would understand that what he is doing violates that right."  Saucier, 533 U.S. at 202, 121 S.Ct. at 2156.  With regard to the use of deadly force, the Craighead case answers the second question of Saucier: "At least since Garner was decided nearly twenty years ago, officers have been on notice that they may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others."  399 F.3d at 962.  Zachary Snyder's right not to be lethally seized in violation of the reasonableness requirement of the Fourth Amendment was clearly established on February 14, 2008.

In Craighead, the Eighth Circuit referred to four cases in which it denied qualified

-17-

immunity where the plaintiff presented evidence to show that the officer used deadly force under circumstances in which the officer should have known that the person did not present an immediate threat of serious physical injury or death.  399 F.3d at 962.  The Court concluded, "Those cases, along with Garner, put officers on notice before December 3, 2001, that they may not use deadly force under circumstances in which they should know that the suspect does not present an immediate threat of serious physical injury or harm.  Craighead's right not to be seized by deadly force was clearly established with sufficient specificity to meet the second prong of Saucier.  Id. at 963.

As was true of the victim in Craighead, Zachary Snyder's right not to be seized by deadly force was clearly established with sufficient specificity to meet the second prong of Saucier. Steven Julian's act of shooting Zachary Snyder was not protected by official immunity.

The Missouri Court of Appeals for the Western District agrees that malice will remove the protection of official immunity from an officer's discretionary act:

> Th[e] doctrine [of official immunity] was established to protect officers from second-guessing based on hindsight.....[B]ut official immunity does not apply to discretionary acts done in bad faith or with malice....Bad faith or malice generally requires actual intent to cause injury....[A] discretionary act is one that requires 'the exercise of reason in the adapt[at]ion of means to an end and discretion in determining how or whether an act should be done or a course pursued.'  (quoting Miller v. Smith, 921 S.W.2d 39, 45 (Mo. App. W.D. 1996))....[D]eciding whether to arrest someone is a matter of discretion – the officer must decide what course should be pursued based on the circumstances at hand.

Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005).

"Although it is stated a variety of ways, it is generally held that official immunity applies to all discretionary acts except those done in bad faith or with malice."  State ex rel Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. banc 1986).  This quote is followed by a long list of cases from

state and federal jurisdictions.

The Twiehaus case continues: "The relevant definition of bad faith or malice in this

context ordinarily contains a requirement of actual intent to cause injury." Id. at 447.  Twiehaus

elaborates in a footnote:

> The objective standard found in numerous federal cases, which provides a breach
> in the summary bar of official immunity where it appears that the official's actions
> violated "clearly established statutory or constitutional rights of which a reasonable
> person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct.
> 2727, 73 L.Ed.2d 396 (1982), is relevant only to claims based on the deprivation
> of constitutional or statutory rights. Id. at 807-8, 818, 102 S.Ct. at 2732-3, 2738.

Id. at 447 n. 3.

The Twiehaus case cites the North Carolina case of Grad v. Kaasa, 321 S.W.2d 888, 890-

91 (N.C. 1984) for the following definition of malice: "A defendant acts with malice when he

wantonly does that which a man of reasonable intelligence would know to be contrary to his duty

and which he intends to be prejudicial or injurious to another."

If one looks at Instruction 15 in the trial, the verdict director, it becomes clear that in

order for the jury to find for the plaintiffs, which they did, they had to believe that Officer Julian

intentionally shot Zachary Snyder.  Instruction Number 15 provided:


INSTRUCTION NO. 15

Your verdict must be for plaintiffs on the wrongful death claim if you
believe:

*First*, defendant intentionally shot Zachary Snyder, and

*Second*, defendant thereby used more force than was reasonably necessary,
and

> *Third*, defendant thereby caused Zachary Snyder's death, unless you
> believe plaintiffs are not entitled to recover by reason of Instruction No. 16.

Following immediately after Instruction No. 15 was the affirmative defense instruction to the wrongful death claim, Instruction No. 16, which the jury did not apply.  In order for the jury to find for the plaintiffs on the wrongful death claim, as noted, they had to believe that Officer Julian intentionally shot Zachary Snyder.

The jury found the shooting of Zachary Snyder by Steven Julian was intentional.  The seizure of Zachary Snyder by shooting him dead was in violation of his Fourth Amendment right to be free from unreasonable seizures.  Such a shooting of an unarmed man, who at the time of the shooting did not pose a danger to the officer or to the public was not protected by official immunity.  Officer Julian's use of lethal force under these circumstances violated his duty as expressed in Tennessee v. Garner, and other cases decided since Garner, all of which put him on notice of that duty.  Craighead, 399 F.3d at 963.   Steven Julian acted "with malice when he wantonly [did] that which a man of reasonable intelligence would know to be contrary to his duty or injurious to another."  Twiehaus, 706 S.W.2d at 447.

As the court found earlier, Steven Julian was not protected by official immunity when he shot Zachary Snyder.

**Public Duty Doctrine**

Defendant alleges that the doctrine of public duty protects him from liability for the shooting of Zachary Snyder.

"Under the public duty doctrine, 'a public employee is not liable to an individual for

-20-

injuries resulting from a breach of duty the employee owes only to the general public.'"  Teague
v. St. Charles County, 708 F. Supp.2d 935, 940 (E.D. Mo. 2010) (quoting Gregg v. City of
Kansas City, 272 S.W.2d 353, 362 (Mo. Ct. App. 2008)).  The Court in Berger v. City of
University City, 676 S.W.2d 39, 41 (Mo. Ct. App. 1984), referred to the public duty doctrine in
the following words: "Missouri cases have consistently held that public officers are not liable for
injuries or damages sustained by particular individuals resulting from breach by the officers of a
duty owed to the general public.  Sherrill v. Wilson, 653 S.W.2d 661 (Mo. banc 1983); Parker v.
Sherman, 456 S.W.2d 577 (Mo. 1970); Jamierson v. Dale, 670 S.W.2d 195 (Mo. App. 1984).
These holdings are based on the absence of a duty to the particular individual as contrasted to the
duty owed to the general public."

The public duty doctrine does not insulate a public employee from all liability.  The
protections of the public duty doctrine are not intended to be limitless and, just as the doctrine of
official immunity will not apply to conduct that is willfully wrong or done with malice or
corruption, the public duty doctrine will not apply where defendant public employees act "in bad
faith or with malice."  Southers, 263 S.W.3d at 612 (citing Jackson v. City of Wentzville, 844
S.W.2d 585, 588 (Mo. Ct. App. 1993)).

The court has discussed earlier what "malice" means.  As stated earlier, "The relevant
definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to
cause injury."  Twiehaus, 706 S.W.2d at 447.  The jury in the Snyder case found that, "*First*,
defendant intentionally shot Zachary Snyder."  (Instruction No. 15.)  Twiehaus also held,
"Defendant Acts with malice when he wantonly does that which a man of reasonable intelligence
would know to be contrary to his duty and which he intends to be prejudicial or injurious to

another."  706 S.W.2d at 447; <u>Parris v. Huttie</u>, 2007 WL 2434058, at *10 (W.D. Mo. 2007).  As

discussed earlier in connection with official immunity, Officer Julian was held to understand the

finding in <u>Garner</u> that he is not permitted to use lethal force to arrest an unarmed and non-

threatening suspect.  <u>Craighead</u>, 399 F.3d at 962-63.  Officer Julian was not protected by the

public duty doctrine when he shot Zachary Snyder.

### Excessive Damages

Defendant argues that the court should grant a new trial because the jury's damages award

is excessive and is the product of passion, sympathy and prejudice.  The jury awarded one million

dollars to the four children.

Although defendant couches his request in terms of asking for a new trial, the basis for his

argument is the claimed excessive amount of the jury's award.

The Court may grant remittitur when "the jury's verdict is excessive because the amount

of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages."  Mo.

Rev. Stat. § 537.068.  <u>See</u> <u>also</u> <u>EEOC v. HBE Corp.</u>, 135 F.3d 543, 557 (8th Cir. 1998) (citing

Missouri's remittitur statute).

Defendant asserts that no evidence was presented that Zachary Snyder ever held a job or

that he provided financial support to his children.

Shortly before he was killed, Zachary Snyder was in school trying to prepare himself to

earn a living, which would have enabled him to support his children.

As the parties know, Section 537.090 RSMo provides for damages to be determined by

the jury and the factors to be considered:

> In every action brought under section 537.080, the trier of the facts may give to

the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss.

It is noteworthy that when the losses suffered by the beneficiaries because of the death of the decedent are listed, support is last, possibly indicating the legislature's determination that the losses listed earlier–companionship, comfort, instruction, guidance, counsel and training–are even more important than support.  And as Section 537.090 states, the jury may award damages for the suffering the decedent may have experienced between the time of injury and the time of death.

But as to damages for support, an amount awarded to each of the four children of Zachary Snyder would be roughly $250,000.  Of course, expenses of suit would be deducted, as would attorney's fees of 40%, or $100,000, which would leave roughly $150,000 for each child.

Pursuant to Federal Rule of Evidence 201, the court may take judicial notice on its own at any stage of the proceeding of facts not subject to reasonable dispute if they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, such as publications of official government agencies.  See Gent v. Cuna Mut. Ins. Soc'y, 611 F.3d 79, 84 n. 5 (1st Cir. 2010) (taking judicial notice of information about Lyme disease taken from website of Center for Disease Control and Prevention, a federal agency); Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (district court appropriately took judicial notice of documents and transcripts produced by Food and Drug Administration, and available to public); Or. Natural Desert Ass'n v. BLM, 625 F.3d 1092, 1112, n. 14 (9th Cir. 2010) (taking judicial notice of public

documents, including 2005 BLM Handbook, along with BLM briefs in other courts not in the record).

In accordance with Federal Rule of Evidence 201(b) and the cited cases, the court takes judicial notice of Miscellaneous Publication No. 1528-2011 issued by the United States Department of Agriculture Center for Nutrition Policy and Promotion, entitled Expenditures on Children by Families, 2011. The year 2011 is the latest year for which statistics are available. The report lists family expenditures to rear a child to age seventeen by a single-parent in 2011as $157,410.  Id. at p. 14.

The net amount each child will receive by the earlier very rough figuring would be less than the 2011estimated expense to rear a child by a single parent through age seventeen.

The report states that it presents the most recent estimates for single-parent families using data from the 2005-06 Consumer Expenditure Survey updated to 2011 dollars using the consumer price index.  The publication states further that results of the study should be of use in developing state child support and foster care guidelines, as well as in family educational programs.  Id. Abstract, June 2012.

The cost of rearing a child to age seventeen presented by the publication shows the amount received by each child for its support alone is below the cost for rearing that child.  The Department of Agriculture figures say nothing about the most important losses experienced by the Snyder children listed above, such as companionship, comfort, instruction, guidance and training.


Defendant's claim that the award of the jury in this case was excessive is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Amend Judgment

(Doc. No. 89) be and it is **granted** in that the judgment shall be amended to apportion the balance

of the damages awarded by the jury among the minor plaintiffs.

**IT IS FURTHER ORDERED** that the $1,000,000.00 awarded by the jury shall be

apportioned as follows: $250,000.00 to M.O., $250,000.00 to M.L.E.M., $250,000.00 to E.S.,

and $250,000.00 to C.S.

**IT IS FURTHER ORDERED** that claimant Amanda Pryor shall collect and receive the

payment of the judgment.

**IT IS FURTHER ORDERED** that claimant Amanda Pryor shall deduct and pay the

expenses of recovery and collection of the judgment and the attorneys' fees as contracted.

**IT IS FURTHER ORDERED** that claimant Amanda Pryor shall acknowledge

satisfaction of the judgment and costs.

**IT IS FURTHER ORDERED** that claimant Amanda Pryor shall distribute the net

proceeds as ordered by the court.

**IT IS FURTHER ORDERED** that claimant Amanda Pryor shall report to the court

indicating compliance with this order.

A separate judgment will be entered on this date.

**IT IS FURTHER ORDERED** that Defendant Julian's Motion for Judgment

Notwithstanding the Verdict or, in the alternative, For a New Trial (Doc. No. 91) be and it is

**denied**.

Dated this  8th  day of August, 2013.

LEWIS. M. BLANTON
UNITED STATES MAGISTRATE JUDGE